

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

April 23, 1947

Overrules
. 0-5179
0-5190
0-5190A

Hon. Claud Gilmer, Chairman
House Committee on Appropriations
House of Representatives
Austin, Texas          Opinion No. V-161

Re: The constitutionality of
H. B. 38, on appropriation
to pay taxes on certain
State Prison Farm lands.

Dear Sir:

You have requested the opinion of this depart-
ment in answer to the following questions concerning
House Bill No. 38, copy of which is attached.

"1. The Committee is advised that,
by a previous legislative act, payment of
taxes to school districts and counties
within the State, as scheduled in the pro-
posed bill, has been authorized - is the
proposed payment to such counties consti-
tutional?

"2. In the event that you advise
such payment is authorized under the Con-
stitution, then will it be possible for
the legislature to authorize payment of
taxes on all State owned property, through-
out the State, and the improvement thereon,
to all political tax levying subdivisions
within which property is situated."

The previous Legislative Act referred to in
your first question is House Bill 289, Chapter 298,
Acts of the Forty-ninth Legislature, Regular Session,
1945, p. 470, codified as Article 7150, subd. 4, Ver-
non's Civil Statutes of Texas, which in part, reads
as follows:

"An Act to amend Subsection 4 of Ar-
ticle 7150 of the Revised Civil Statutes
of Texas, 1925, so as to cover and include
common and independent school districts;

and declaring an emergency.

"Be it enacted by the Legislature of the State of Texas:

"Section 1. That Subsection 4 of Article 7150 of the Revised Civil Statutes of Texas, 1925, be and the same is hereby amended so as to hereafter read as follows:

"'Subsection 4. All property, whether real or personal, belonging exclusively to this State, or any political subdivisions thereof, or the United States, except that in each county in this State, where the State of Texas has or may acquire and own land for the purpose of establishing thereon State farms and employing thereon convict labor on State account, the penitentiary board or board of penitentiary commissioners, or other officers of the penitentiary having the management of the same, shall render said land for taxes to the tax assessor of said county and to the tax assessor of each independent school district in which said property, or any part thereof, is located; and the taxes on same shall be assessed and collected in the manner required by law for the assessment and collection of other taxes; provided, that said taxes shall be assessed and collected for county and independent school district purposes only; and said county and independent school district taxes, including all current taxes and all delinquent taxes, shall be paid annually out of the General Revenue Fund of the State. In arriving at the amount to be paid in taxes to the counties the value of the land only shall be considered and not the value of the buildings and other improvements owned by the State and situated on said land.'

"Sec. 2. The fact that county taxes are delinquent and unpaid against various State farms covered by this Subsection, and the further fact that the counties in which said State farms are located are in dire

need of said taxes, in order to efficiently perform their governmental functions, create an emergency . . . . " (Emphasis added)

Article 5065, Subd. 3, now Article 7150, Subd. 4, Revised Civil Statutes, as amended by Chapter 159, Acts of the Thirtieth Legislature, 1907, reads as follows:

"The following property shall be exempt from taxation, to wit:

"  . . .

"3.   All property, whether real or personal, belonging exclusively to this State, or any political subdivision thereof, or to the United States".

Article 5065, Subd. 3, Revised Civil Statutes of Texas, 1895, was amended by House Bill No. 12, Chapter 5, Acts of the Thirty-first Legislature, 4th Called Session, 1910, which, including the emergency clause in part, reads as follows:

"Be it enacted by the Legislature of the State of Texas:

"Section 1.   In each county in this State, where the State of Texas has heretofore or may hereafter acquire and own land for the purpose of establishing thereon State farms and employing thereon convict labor on State account, it shall be the duty of the Penitentiary Board or Board of Penitentiary Commissioners, or other officers of the penitentiary having the managing of same, to render said land for taxes to the tax assessor of said county, and the taxes on same shall be assessed and collected in the manner required by law for the assessment and collection of other taxes; provided, that said taxes shall be assessed and collected for county purposes only; and said county taxes shall be paid annually out of the revenue derived from such State farms respectively, by the officer or officers having the management thereof, and same shall be charged to the expense account

of operating such farm, <u>and no debt shall</u>
<u>be created against the general revenue of</u>
<u>the State in case of the failure to pay</u>
<u>said taxes out of the revenues of any such</u>
<u>farm.</u> And provided further, that in arriv-
ing at the amount to be paid in taxes to
the counties the value of the land shall be
considered and not the value of the build-
ings and other improvements owned by the
State and situated on said land.

"Sec. 2.   This Act shall repeal Sub-
division 3 of Article 5065 of the Revised
Statutes of 1895, only in so far as the
same is in conflict herewith.

"Sec. 3.   The fact that the State of
Texas has acquired valuable lands in various
counties of the State of Texas to be used
in connection with the State penitentiary
system, thereby depriving the counties where
said lands are located of any revenue from
taxes thereon, and the further fact that
the counties where said farms are located
need said revenue, create an emergency . .
. . . " (Emphasis added)

It will be noted from a comparison of the
emphasized portions of the two acts, that the import-
ant change made by the Forty-ninth Legislature was to
repeal that portion of the original act which provided
that <u>no debt shall be created against the general fund</u>
for the payment of certain taxes and instead specifi-
cally provide that such taxes, including all delinquent
taxes, <u>shall be paid out of the general fund.</u>

Without discussing the obvious unconstitution-
ality of House Bill No. 289, Acts 49th Legislature, be-
cause of its defective caption (Article III, Section 35,
Constitution of Texas), it is clear that both House
Bill No. 12, Acts 31st Legislature and House Bill No.
289; Acts 49th Legislature, are unconstitutional and
void insofar as either of such acts attempts to amend
or repeal the provisions of Subdivision 3 of Article
5065, (now Subdivision 4, Article 7150) since each is
violative of Article XI, Section 9, of the Constitution
of Texas, which reads as follows:

"The property of counties, cities and
towns, owned and held only for public pur-
poses, such as public buildings and the
sites therefor. Fire engines and the furn-
iture thereof, and all property used, or
intended for extinguishing fires, public
grounds and all other property devoted ex-
clusively to the use and benefit of the pub-
lic shall be exempt from forced sale and from
taxation provided, nothing herein shall pre-
vent the enforcement of the venders lien,
the mechanics or builders lien, or other liens
now existing." (Emphasis added)

That land acquired and owned by the State of
Texas for the purpose of establishing State farms to
be used for the employment of convict labor thereon
on State account, is "property devoted exclusively to
the use and benefit of the public" is so well estab-
lished in Texas that the citation of authorities is
deemed unnecessary.

Such being the fact, the rule of law stated
by Chief Justice Stayton in Dougherty v. Thompson, 71
Tex. 192, 9 S. W. 99, is applicable, and is here quoted:

"Section 9 of Article 11, however, ex-
empts from taxation 'property of counties,
cities and towns owned and held only for
public purposes, such as public buildings
and sites therefor, fire engines and the
furniture thereof, and all property used
or intended for extinguishing fires, pub-
lic grounds, and all other property devoted
exclusively to the use and benefit of the
public.' That the constitution exempts
from taxation the legislature has no power
to require to be taxed."

To the same effect is the holding of the Sup-
reme Court in the case of Lower Colorado River Authority
v. Chemical Bank and Trust Co. 190 S. W. (2d) 48, where
in the Court said such an Act

" . . . would mean that government in
Texas could engage in the senseless process
of taxing itself, the net result of which
would be but to take its own money out of

one pocket for the purpose of putting it into another -- less the cost of assessing and collecting the tax. Obviously that procedure could never accomplish anything but an idle expenditure of public funds. . . ."

Since the amendments created by both House Bill No. 12 and House Bill No. 289 above quoted are unconstitutional and void for the reason stated, House Bill No. 38, Fiftieth Legislature must be considered as a separate and distinct bill, the constitutionality of which must be determined solely from the construction of its own provisions under the Constitution and laws of Texas, which existed prior to the passage of House Bill No. 12 by the Thirty-first Legislature in 1910.

Article III, Section 51, of the Constitution of Texas, provides in part that "The Legislature shall have no power to make any grant or authorize the making of any grant of public moneys to any . . . . municipal or other corporations whatseever . . . . ", and a county being a municipal corporation, House Bill No. 38 is in direct contravention of the provisions of both Article III, Section 51, and Article XI, Section 9, of the Constitution of Texas, and is unconstitutional.

In view of the answer to the first question, your second question need not be answered.

### SUMMARY

House Bill No. 38, Fiftieth Legislature, providing for the payment of certain taxes on State owned lands to certain counties out of the General Fund of the State, is unconstitutional and void as violative of the provisions of Article III, Section 51, and Article XI, Section 9, Constitution of Texas.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

APPROVED APR. 23, 1947

*Price Daniel*

ATTORNEY GENERAL

By

C. K. Richards
Assistant

OKR:lh:mrj